IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMSC-011

Filing Date: March 25, 3013

Docket No. 33,350

GABRIEL GEORGE QUINTANA,

        Petitioner-Appellee,

v.

ERASMO BRAVO, Warden,
and STATE OF NEW MEXICO,

        Respondents-Appellants.

APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY
Sheri A. Raphaelson, District Judge

Gary K. King, Attorney General
Anita Carlson, Special Assistant Attorney General
Margaret E. McLean, Assistant Attorney General
Nicole Beder, Assistant Attorney General
James W. Grayson, Assistant Attorney General
Santa Fe, NM

for Appellants

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellee

## OPINION

**CHÁVEZ, Justice.**

{1}     Respondents the State of New Mexico and Erasmo Bravo appeal the district court's grant of Petitioner George Quintana's petition for writ of habeas corpus. The district court granted the petition based exclusively on the allegations it contained and on those in

Quintana's amended petition, together with a supporting affidavit from one of Quintana's trial counsel admitting to being ineffective in her representation of him. The district court's rationale for this unorthodox decision was Respondents' failure to timely file a response to the amended petition and their failure to appear at a scheduled motions hearing, despite having received notice of the hearing. The reason for Respondents' failure to file a response and appear at the hearing was a conflict of interest that arose when the attorney affiant went to work for the First Judicial District Attorney (District Attorney) in the same jurisdiction. The district court was aware of the conflict and the confusion regarding whether an attorney from the Attorney General's office or an attorney from a district attorney's office from another jurisdiction would represent Respondents. Despite acknowledging the existence of the conflict and the confusion about who would represent Respondents, the district court vacated Quintana's convictions and granted him a new trial.

**{2}** We hold that the conduct of the District Attorney and the Attorney General did not rise to the level of stubborn resistance to the district court's orders that would justify the extreme sanction of vacating Quintana's jury convictions without both considering a response from Respondents and after having had a full evidentiary hearing. We reverse the district court's grant of Quintana's petition for writ of habeas corpus and remand for proceedings consistent with this opinion.

## BACKGROUND

**{3}** Quintana was convicted by a jury of the first-degree murder of Elisa Apodaca, who was the mother of his estranged wife, Marisela Quintana; the attempted second-degree murder of Marisela; aggravated battery against a household member; tampering with evidence; and violation of a protective order. Quintana appealed his convictions to this Court. Except for reversing the aggravated battery conviction on double jeopardy grounds, we affirmed his convictions in a decision filed in October 2009. *State v. Quintana*, No. 30,847, slip op. ¶¶ 9, 35 (N.M. Sup. Ct. Oct. 19, 2009). One month later, Quintana filed a pro se petition for writ of habeas corpus in the First Judicial District Court. District Judge Sheri Raphaelson was assigned the case.

**{4}** Judge Raphaelson ordered appointment of counsel for Quintana and a March 15, 2010 filing deadline for any amended petition. The order also required the District Attorney to file a response within ninety days of being served either with Quintana's amended petition or with a declaration that he did not intend to file an amended petition, whichever occurred first.

**{5}** On February 19, 2010, Jeffery Jones entered his appearance as Quintana's attorney. Jones had not filed either an amended petition or a declaration that he did not intend to file an amended petition by the March 15, 2010 deadline. However, on April 15, 2010, Jones filed an unopposed motion for an extension of time to file an amended petition. Judge Raphaelson granted the motion and set a deadline of August 19, 2010 for the amended petition.

2

**{6}** On August 13, 2010, six days before the new court-ordered deadline for filing an amended petition, Jones filed a second unopposed motion for an extension of time to file an amended petition. The district court granted the motion, giving Quintana until November 18, 2010 to file an amended petition. The amended petition was filed on November 18, 2010.

**{7}** In his amended petition, Quintana claimed that he was denied effective assistance of counsel and added three new grounds to the eight grounds that he had asserted in his original petition. As the three new grounds, Quintana asserted that his attorneys were ineffective because they (1) did not effectively impeach his estranged wife, Marisela; (2) failed to adequately investigate defenses that would exculpate Quintana; and (3) failed to retain an expert and bring Marisela's car to the courthouse to demonstrate that it would have been impossible for Quintana to have attacked Marisela as she described during her testimony. In support of these allegations, Quintana attached the affidavit of Cynthia Hill, one of his trial counsel, to the amended petition. The affidavit described how Hill and co-counsel Damian Horne were ineffective in representing Quintana.

**{8}** Under the provisions of the original order, the District Attorney had until February 18, 2011 to file a response to the amended petition. The District Attorney never filed a response. On March 11, 2011, Quintana filed a "Motion to Rule on the Pleadings and/or Status Hearing" asking the district court to grant his amended petition for habeas corpus or schedule a status conference. Quintana did not specify whether he had sought the concurrence of opposing counsel to the motion. One reason advanced by the District Attorney for not filing a response is that Hill, Quintana's trial counsel, who admitted by affidavit that her representation of Quintana was ineffective, went to work for the District Attorney. This situation created a conflict of interest. *See Roy D. Mercer, LLC v. Reynolds*, 2013-NMSC-002, ¶¶ 16-17, 19, 292 P.3d 466.

**{9}** Judge Raphaelson set a hearing on Quintana's motion for May 26, 2011, and sent notices to the District Attorney and the Attorney General. It is not clear why notice was sent to the Attorney General, which had not entered an appearance. However, under certain circumstances, the Attorney General does respond to petitions for writ of habeas corpus. *See* NMSA 1978, § 8-5-2 (1975); NMSA 1978, § 8-5-3 (1933); *State v. Koehler*, 96 N.M. 293, 295-96, 629 P.2d 1222, 1224-25 (1981) (holding that when the district attorney delegated a prosecution to the Attorney General, the Attorney General was compelled to proceed).

**{10}** When Judge Raphaelson called the case for hearing on May 26, 2011, no one entered an appearance for Respondents. Quintana's attorney related information from an attorney in the District Attorney's office, who told him that because of the conflict that was created after employing Hill, it could not continue to represent Respondents, but believed that the Attorney General would do so. However, when Quintana's attorney called the Attorney General's office, he was told that the Attorney General was under the impression that a district attorney's office from another jurisdiction would represent Respondents.

3

**{11}** When Judge Raphaelson acknowledged the State's failure to either respond or appear despite receiving notice, but announced her intention to hear Quintana's motion nonetheless, Assistant District Attorney Doug Couleur announced that he would represent Respondents. Couleur explained that he called his office to find out why no one had appeared to represent Respondents, learned about the conflict, and found out about the District Attorney's belief that the Attorney General would represent Respondents. He also stated that now that the District Attorney had learned otherwise, they would attempt to make immediate arrangements for a district attorney's office from another jurisdiction to represent Respondents.

**{12}** Judge Raphaelson acknowledged the conflict of interest, but said that it was the responsibility of the Attorney General to appear or make other arrangements. Couleur assured Judge Raphaelson that they would straighten the matter out and that the District Attorney was at that moment trying to secure counsel for Respondents. Judge Raphaelson was unimpressed because the District Attorney had to have been aware of the conflict for months, had not filed a response, and no one had appeared at the hearing, despite receiving notice of the hearing. Judge Raphaelson announced that she would grant Quintana's motion to rule on the pleadings. Couleur pleaded with Judge Raphaelson to allow the State to respond. Judge Raphaelson said that she would allow the State to respond if the District Attorney could show good cause for why it did not file a timely response. Five days later, on May 31, 2011, Judge Raphaelson entered two orders, one granting the motion to rule on the pleadings and the other vacating Quintana's convictions and ordering a new trial.

**{13}** On the same day the two orders were entered, Todd Heisey from the Second Judicial District Attorney's Office was appointed as a special prosecutor. On June 2, 2011, Heisey entered his appearance on behalf of Respondents and filed a motion for an extension of time to file a response to the amended petition. On June 24, 2011, Heisey filed a motion to reconsider the two orders with a supporting brief and requested a hearing on the motion to reconsider. Judge Raphaelson issued a notice that she would not consider the motion because it did not include a response and a reply, as required by Local Rule LR1-306(G) NMRA. Quintana did not respond to the motion to reconsider. Heisey later resubmitted the motion and the brief to the district court, pointing out that Quintana's failure to respond was to be deemed consent to the motion under LR1-306(D). However, on August 15, 2011, almost two and one-half months after the motion to reconsider was filed, Quintana filed a motion asking Judge Raphaelson to uphold her prior orders and to deny the motion to reconsider because Quintana did not consent to the motion.

**{14}** Judge Raphaelson held a hearing on October 17, 2011 on Respondents' motion to reconsider. Heisey introduced an affidavit from Damian Horne, Quintana's other trial attorney, that disputed the allegations in the amended petition. Judge Raphaelson said that the affidavit would not be relevant unless and until she agreed to allow the District Attorney to file a late response to the amended petition. After hearing argument from Heisey, Judge Raphaelson summarized her understanding of the events leading up to the hearing. She indicated that other than vague efforts to secure substitute counsel, the District Attorney had

4

not made a showing of excusable neglect for filing a late response. To emphasize her strong disapproval with how the District Attorney had handled the habeas corpus proceeding, Judge Raphaelson said that it was not excusable neglect but incompetence on the District Attorney's part. The motion to reconsider was denied.

**{15}**    Respondents appealed as of right to this Court under the provisions of Rule 5-802(H)(1) NMRA. The appeal was timely because it was filed within thirty days of the district court's order denying the motion to reconsider. *Id.*; Rule 12-201(A)(2) NMRA; *see also* NMSA 1978, § 39-1-1 (1917); *Allen v. LeMaster*, 2012-NMSC-001, ¶ 17, 267 P.3d 806 (post-conviction habeas corpus proceedings are a continuation of the defendant's criminal case); *State v. Gonzales*, 110 N.M. 218, 226, 794 P.2d 361, 369 (Ct. App. 1990) (Section 39-1-1 applies in criminal cases).

## DISCUSSION

**{16}**    With plenty of blame to go around, we acknowledge that this habeas corpus proceeding was not a model of diligence, cooperation, or fair play. Nor was it, however, a case that even remotely warranted a district judge vacating a jury verdict without considering a response from the State and/or conducting an evidentiary hearing.

> [J]ury verdicts reached after painstaking consideration of the evidence at trial and thorough deliberation should not be precipitously disregarded and overturned. Rather, jury verdicts should be disturbed only upon a court's firmest conviction and belief—formed after the most searching and comprehensive review of all of the evidence and issues—that a miscarriage of justice has occurred and a defendant's fundamental constitutional rights violated.

*United States v. Koubriti*, 336 F. Supp. 2d 676, 679 (E.D. Mich. 2004). A defendant who believes that his or her conviction was unconstitutional may pursue a constitutional procedural device that has become know as the "Great Writ"—the writ of habeas corpus. *Cummings v. State*, 2007-NMSC-048, ¶¶ 18, 21-22, 142 N.M. 656, 168 P.3d 1080 (describing the procedure for a habeas corpus petitioner to exercise his or her long-established constitutional right to petition this Court for the Great Writ).

**{17}**    In *Caristo v. Sullivan*, 112 N.M. 623, 818 P.2d 401 (1991), to emphasize the need for the courts and the litigants to carefully and diligently process petitions for writs of habeas corpus, we restated what has been written by the United States Supreme Court about the importance of the writ of habeas corpus. Because we are alarmed, not so much by this case, but by what we have seen in other habeas corpus proceedings, we repeat what we wrote in *Caristo*:

> "[T]here is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas

corpus. . . ." *Harris v. Nelson*, 394 U.S. 286, 292 (1969). Because the writ of habeas corpus protects our most basic right of freedom from illegal restraint on personal liberty, the writ must be construed to afford "'a swift and imperative remedy in all cases of illegal restraint or confinement,'" *Fay v. Noia*, 372 U.S. 391, 400 (1963) (quoting *Secretary of State for Home Affairs v. O'Brien*, 1923 App. Cas. 603, 609), and therefore requires "*prompt* adjudication of the validity of the challenged restraint," *Peyton v. Rowe*, 391 U.S. 54, 59 (1968) (emphasis in original). "The writ of habeas corpus, challenging illegality of detention, is reduced to a sham if the trial courts do not act within a reasonable time." *Jones v. Shell*, 572 F.2d 1278, 1280 (8th Cir. 1978).

112 N.M. at 628, 818 P.2d at 406. It is important for the litigants and the courts to promptly process petitions for writs of habeas corpus to avoid denying the petitioner constitutional due process. *See Jones*, 572 F.2d at 1280 (a fourteen-month delay by the court in processing the petitioner's petition for writ of habeas corpus denied the petitioner due process).

**{18}** One remedy we fashioned for the delay in processing a petition for writ of habeas corpus in *Caristo* was a default judgment, reserved as a sanction in those extreme cases in which the state is guilty of lengthy and unwarranted delay. 112 N.M. at 630, 818 P.2d at 408. We also left it to the discretion of the judge in those extreme cases to decide whether to order an evidentiary hearing or to rule on the merits of the petitioner's claim without considering a response from the state. *Id.* However, after we fashioned such a remedy in *Caristo*, we were unwilling to impose the remedy in favor of the petitioners, despite the fact that their respective petitions had been pending for as long as five years. *Id.* at 624, 818 P.2d at 402. In addition, the *Caristo* petitioners only sought a writ seeking their resentencing, as opposed to a writ vacating their convictions. *Id.* at 625, 626, 818 P.2d at 403, 404. Although we acknowledged that the state's conduct in *Caristo* was not a model of diligent attention to the pending habeas corpus proceedings, we did not believe that the state's conduct "reached the point of stubborn resistance to the district court's orders that would justify" the extreme sanction of a default judgment. *Id.* at 624, 818 P.2d at 402.

**{19}** The question in this case is whether the State's delay in responding to the amended petition was the kind of extreme case that warranted the sanction of the district court vacating a jury verdict and ordering a new trial without considering either a response from the State or holding an evidentiary hearing. The answer is absolutely not.

**{20}** Within one month of our having affirmed Quintana's conviction, he filed a pro se petition for a writ of habeas corpus. *Quintana*, No. 30,847, slip op. ¶ 35. Judge Raphaelson expeditiously reviewed the petition and appointed the Public Defender Department to represent Quintana, and allowed Quintana to either file an amended petition by March 15, 2010 or a declaration that an amended petition would not be filed. Neither document was filed before the district court's deadline. Instead, Quintana filed an untimely but unopposed motion for an extension of time to file an amended petition. Quintana subsequently filed a

second unopposed motion for extension of time to file an amended petition, which was granted. From all appearances, at this time Jones and the District Attorney were working professionally and in the spirit of cooperation to process Quintana's petition. Finally, on November 18, 2010, Jones filed an amended petition on Quintana's behalf.

{21}    Pursuant to the district court's original order setting deadlines, a response to the amended petition should have been filed before February 18, 2011. Respondents did not file a response and the spirit of cooperation had ended. Quintana's attorney, without conferring with Respondents' attorney, filed a "Motion to Rule on the Pleadings and/or Status Hearing" just three weeks after the February 18, 2011 deadline had expired. A hearing on Quintana's motion was scheduled for May 26, 2011.

{22}    During that hearing, it became apparent that the District Attorney had a conflict of interest because the attorney affiant who had signed an affidavit in support of Quintana's petition went to work for the District Attorney. It also became apparent that efforts had been made to have the Attorney General represent Respondents, but apparently those efforts failed for reasons that are not clear in the record. As such, Respondents were not represented at the May 26, 2011 hearing.

{23}    Judge Raphaelson was understandably concerned about the facts that Respondents did not file a response to the amended petition and they were not represented at the hearing. Her response was to vacate Quintana's convictions and grant him a new trial. This action was inappropriate. At the May 26, 2011 hearing, both Quintana's attorney and Assistant District Attorney Couleur informed Judge Raphaelson about the conflict of interest and efforts to secure counsel for the Respondent. Given this information, at a minimum Judge Raphaelson should have held a hearing to determine why a response was not filed and why Respondents were not being represented. Both Quintana's attorney and Assistant District Attorney Couleur informed Judge Raphaelson about the conflict of interest and efforts to secure counsel for Respondents. What was described by the attorneys at the May 26, 2011 hearing was far from evidence of Respondents' stubborn resistance to the district court's order, or even a lengthy and unwarranted delay in responding. If Judge Raphaelson remained skeptical, she should have summoned representatives from the District Attorney's office and the Attorney General's office to conduct a hearing to determine if in fact Respondents were stubbornly resisting her order to respond and appear, or if the failure to respond to the amended petition and appear at the hearing was as a result of negligent conduct. If the situation was the latter, vacating a jury verdict without giving Respondents an opportunity to respond and without an evidentiary hearing would not have been warranted.

{24}    Despite general statements from the attorneys concerning Respondents' failure to appear at the hearing, most details remained unknown, including when affiant Hill became an employee of the District Attorney, when the District Attorney discovered the conflict in the Quintana case, what efforts the District Attorney made to arrange Attorney General representation for Respondents, when the District Attorney made these efforts, what were

7

the results of these efforts, why the Attorney General did not enter an appearance on behalf of Respondents, whether the District Attorney and the Attorney General were simply ignoring the Quintana habeas corpus proceedings, whether there was miscommunication between the District Attorney and the Attorney General, and why this miscommunication occurred. More questions than answers arose as a result of what was described to Judge Raphaelson by the lawyers who spoke during the May 26, 2011 hearing.

**{25}** The standard we set forth in *Caristo* for granting a petition for writ of habeas corpus without a response from the state requires a determination of whether the state's conduct "reached the point of stubborn resistance to the court's orders that would justify such an extreme sanction." 112 N.M. at 624, 818 P.2d at 402. This was the standard to which Judge Raphaelson should have adhered, not the "excusable neglect" standard. The "excusable neglect" standard relied upon by the district court is found in Rule 1-006(B) NMRA of the Rules of Civil Procedure. We noted in *Caristo* that habeas corpus proceedings are not civil actions. *Id.* at 628-29, 818 P.2d at 406-07. When reviewed under the appropriate standard, the record before us is void of any evidence that Respondents were stubbornly resisting the orders of the district court.

**{26}** Indeed, as represented by Assistant District Attorney Couleur during the May 26, 2011 hearing, the record supports the inference that the District Attorney was immediately attempting to find a different district attorney's office to represent Respondents. On June 2, 2011, the Second Judicial District Attorney's designee was appointed, and the appropriate oaths and acceptance of the appointment, an entry of appearance, and a request for an extension of time to respond to the amended petition were filed with the district court.

**{27}** On June 24, 2011, Respondents filed a request for hearing and a motion to reconsider the grant of Quintana's petition for writ of habeas corpus with a supporting brief. Judge Raphaelson then filed a "Notice of Court's Refusal to Act on 'Motion to Reconsider Grant of Petition for Writ of Habeas Corpus' Due to Failure of the Respondent to Comply with LR1-306G."[1] Respondents filed a notice of compliance with LR1-306(G) on August 3, 2011, and noted that because Quintana had not responded to the motion to reconsider, under LR1-306(D) and Rule 1-007.1 NMRA, he was to be deemed as having consented to the motion. Respondents' pleadings noted the conflict of interest, gave a vague description of efforts to have the Attorney General represent Respondents, and set out in some detail why Quintana's petition lacked merit. On August 15, 2011, Quintana filed a pleading asking the district court to uphold the grant of his petition for writ of habeas corpus and to deny the motion to reconsider.

**{28}** A hearing on the pending motion to reconsider was held on October 17, 2011. During

---

[1]We note that Judge Raphaelson did not file a similar notice when Quintana filed his "Motion to Rule on the Pleadings and/or Status Hearing" without complying with LR1-306(G).

the hearing, an affidavit from Damian Horne, Quintana's other trial counsel, was marked, without objection, as Exhibit 1. This affidavit purported to rebut Hill's affidavit. Judge Raphaelson declined to consider the affidavit unless Respondents could persuade her that their failure to file a timely response was due to excusable neglect. Because Respondents were unable to detail whether the District Attorney had actually requested Attorney General King or his Chief Deputy to consider representing Respondents, Judge Raphaelson was persuaded that what the District Attorney had done in the case was not excusable neglect, it was just incompetence. The motion to reconsider was denied.

{29}   The conduct of the District Attorney and the Attorney General is not to be commended. During oral argument in this case, we ordered that representatives of both the District Attorney and the Attorney General appear and answer questions from the district court designed to make sure that they know that prompt attention to habeas corpus proceedings is essential. The failure of communication in this case was evidently due to the informality with which the District Attorney approached the Attorney General to request representation for Respondents. Although the conduct of the State is not to be commended, we do not find that the State was resisting, much less stubbornly resisting, Judge Raphaelson's order that a response be filed within ninety days of when the amended petition was filed.

{30}   Judge Raphaelson should have explored alternative sanctions or orders under the circumstances of this case. As an example, during the May 26, 2011 hearing she could have ordered the District Attorney to find substitute counsel within a short time period under penalty of deciding the merits of Quintana's petition without a response from the State. However, immediately deciding the merits of Quintana's petition, without a response, and with the accepted fact that a conflict of interest existed, along with some effort by the District Attorney to find substitute counsel, was against logic, reason, and impartiality. Quintana did not file an amended petition for eight months past the original deadline. At the time that Respondents filed their motion to reconsider with a brief detailing why Quintana's petition lacked merit, the delay in responding was only four months.

{31}   Respondents argue that if this Court reverses the district court and remands for an evidentiary hearing, we should also order the First Judicial District Court to reassign the case to a different judge. *See State v. Bonilla*, 2000-NMSC-037, ¶ 15, 130 N.M. 1, 15 P.3d 491 (judge's comments warranted a remand to a different judge to avoid any appearance of impropriety). Respondents contend that "Judge Raphaelson did not treat both parties with an even hand." As evidence of disparate treatment, Respondents note that Judge Raphaelson (1) did not sanction Quintana when he failed to comply with the deadline to file an amended petition as provided for in her initial order; (2) held that Respondents were deemed to have consented to Quintana's motion to rule on the pleadings when a response was not timely filed, but did not make the same ruling against Quintana when Quintana did not timely respond to Respondents' motion to reconsider; and (3) did not file a notice declining to review Quintana's motion to rule on the pleadings, despite the fact that Quintana violated LR1-306(D), whereas she did file such a notice when Respondents filed their motion to

reconsider without complying with LR1-306(D). We agree that on remand this matter should be reassigned to a different judge.

**{32}** Finally, Respondents have included an argument in their brief regarding why Quintana's petition for writ of habeas corpus lacks merit. We decline to comment on the merits of Quintana's petition.

**CONCLUSION**

**{33}** We reverse the district court and remand for reassignment to a different judge, with instructions to the new judge to enter a scheduling order requiring a response from Respondents and a reply from Quintana. In addition, the district court should schedule an evidentiary hearing on the merits of Quintana's petition because of the factual issues created by the competing affidavits of Quintana's trial counsel.

**{34}    IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**CHARLES W. DANIELS, Justice**

_____
**BARBARA J. VIGIL, Justice**

**Topic Index for *Quintana v. Bravo*, No. 33,350**

**ATTORNEYS**
Conflict of Interest
Effective Assistance of Counsel
Substitution or Withdrawal of Counsel

**CRIMINAL PROCEDURE**
Delay in Filing
Effective Assistance of Counsel

Pro Se
Time Limitations
Vacating Judgment
Verdict
Writ of Habeas Corpus

**JUDGMENT**
Default Judgment

**REMEDIES**
Writ of Habeas Corpus