2001-NMCA-032

24 P.3d 351

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Rebecca WILSON, Defendant–Appellant.**

No. 21,279.

Court of Appeals of New Mexico.

April 11, 2001.

Certiorari Granted, No. 26,923,
May 25, 2001.

Patricia A. Madrid, Attorney General, Anita Carlson, Ass't Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Samantha J. Fenrow, Ass't Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} Following the United States Supreme Court's announcement of its decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), courts across the country have been inundated by constitutional challenges to state and federal sentencing schemes. In this appeal, we must

decide the constitutionality of NMSA 1978, § 31–18–15.1 (1993), which requires the sentencing court to hold a hearing to determine whether aggravating or mitigating circumstances warrant a departure from the basic felony sentences set forth in NMSA 1978, § 31–18–15 (1994).

{2} Defendant was convicted of child abuse resulting in death, contrary to NMSA 1978, § 30–6–1(C) (1997). Under Section 31–18–15, the basic sentence for a first degree felony is 18 years, and Section 31–18–15.1 allows for an increase of up to one-third of this basic sentence upon the finding of aggravating circumstances. At the sentencing hearing, the trial court found seven aggravating circumstances and sentenced Defendant to the maximum term of 24 years' imprisonment.

{3} On appeal, Defendant raises four issues: (1) whether an increase in a basic felony sentence under Section 31–18–15.1 is unconstitutional under *Apprendi*, unless the findings of aggravating circumstances are made by a jury beyond a reasonable doubt; (2) whether the trial court abused its discretion in finding that "lack of remorse" and "initial and continued deception" were aggravating circumstances justifying an increase in Defendant's basic sentence; (3) whether substantial evidence supports Defendant's conviction; and (4) whether the trial court abused its discretion by allowing the State's expert witness to present rebuttal testimony.

{4} We hold that (1) Sections 31–18–15 and 31–18–15.1 should be read together to provide for a range of sentences, and that sentencing within this range, based on findings made on the record by the trial court, is constitutional under the *Apprendi* decision; (2) the normal rules of preservation apply to Defendant's challenge to the trial court's findings of aggravating circumstances under Section 31–18–15.1, and that Defendant failed to preserve this issue for our review; (3) substantial evidence supports Defendant's conviction; and (4) the trial court did not abuse its discretion in allowing the State to call its expert as a rebuttal witness. We affirm.

## FACTS AND PROCEDURAL HISTORY

{5} On July 20, 1998, Defendant was at home alone with her two children and two step-children. After the children went to bed, Defendant went in to check on them and found that the victim, her two and one-half year old step-son, was not breathing. Defendant called her husband and then called 911. She performed CPR on the victim until the ambulance and police arrived. The victim was transported to the emergency room where he was pronounced dead.

{6} At trial, Defendant testified that on the night of the victim's death, her step-son had been acting up and refused to go to bed when she asked him to do so. She said that she picked the victim up and playfully tossed him into bed, something that both Defendant and her husband testified that they often did with the children. Defendant testified that she heard the victim's head hit something on the bed, but that when she checked on him his eyes were open and he was not crying. Only later, when she checked on the victim a second time, did Defendant realize that the victim was no longer breathing.

{7} When Defendant arrived at the emergency room, she told the attending physician that the victim had fallen several days earlier and that the victim had been throwing tantrums, during which he would throw himself on the floor and bang his head. Defendant did not tell the doctor that she had tossed the victim onto the bed. In addition, Defendant admitted that she never told anyone in law enforcement about tossing the victim into bed, and Defendant's husband testified that Defendant did not tell him this version of events until several days after the victim's death.

{8} Defendant was charged with child abuse resulting in death. Prior to trial, the State learned that Defendant had videotaped a re-enactment of her version of the events leading up to the victim's death. At the State's request, the trial court ordered Defendant to provide the State with a copy of the videotape by January 24, 2000. Defendant failed to produce the videotape until February 7, 2000, the day before the trial began. On February 14, 2000, Defendant asked the trial court to exclude rebuttal testi-

mony by one of the State's expert witnesses, Dr. Karen Campbell. The trial court denied Defendant's motion based on its findings that the late disclosure of the videotape had prevented the State from calling an expert in child injuries in its case in chief and that Dr. Campbell's testimony would be proper rebuttal of the defenses presented by Defendant.

{9} At trial, Defendant presented three defense theories: (1) that the victim's death was a freak accident caused by Defendant's playful tossing of the victim into bed, (2) that by tossing the victim into the bed, Defendant unintentionally exacerbated the victim's prior head injury, or (3) that the victim had injured himself by repeatedly banging his head into the floor while throwing a tantrum. The State offered medical testimony that the injuries suffered by the victim were incompatible with Defendant's three scenarios. The experts testified that the complex skull fractures suffered by the victim were consistent with the victim having been ejected from a car in a highway-speed automobile accident or with his falling from a two- to four-story building. The experts also testified that the victim had approximately seventeen bruises of varying ages around his head and neck, in addition to bruises on other parts of his body. In addition, the witnesses testified that some of the bruises were in atypical places, and not over bony prominences where one would expect them if they had been caused by the victim falling down. Based on the severity of the skull fractures suffered by the victim as well as the suspicious bruising, the experts concluded that the victim died as a result of child abuse.

{10} After the jury found Defendant guilty of child abuse resulting in death, the trial court held a sentencing hearing, as required by Section 31–18–15.1. The court found seven aggravating circumstances: (1) the viciousness of the crime, (2) the vulnerability of the victim, (3) the relationship between Defendant and the victim (as care giver and child), (4) Defendant's initial and continued deception, (5) a demonstrated lack of remorse by Defendant, (6) ongoing physical abuse in the home, and (7) the severe emotional trauma exercised by Defendant on other children in the household. The court sentenced Defen-dant to the basic eighteen-year term and added six years based on the aggravating circumstances, for a total of twenty-four years' imprisonment, the maximum sentence allowed for a first degree felony under Sections 31–18–15 and 31–18–15.1.

## DISCUSSION

### A. *Apprendi*

{11} Defendant argues that New Mexico's felony sentencing scheme is unconstitutional under *Apprendi*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, in which the Supreme Court struck down a New Jersey law that allowed a court to increase a maximum criminal sentence based on facts not found by a jury beyond a reasonable doubt. The State argues that Defendant failed to preserve this issue during the sentencing hearing and thus appellate review is precluded. If Defendant is correct in her assertion that the *Apprendi* decision requires that a jury find all Section 31–18–15.1 aggravating factors beyond a reasonable doubt, it is because the aggravating factors are elements of a crime. Issues involving failure to instruct the jury upon essential elements when they are at issue are excepted from the preservation requirement. *See State v. Osborne*, 111 N.M. 654, 661–62, 808 P.2d 624, 631–32 (1991). Therefore, we conclude that this issue is properly before us.

{12} In *Apprendi*, the defendant fired several bullets into the home of an African American family that had recently moved into a previously all-white neighborhood. 120 S.Ct. at 2351. After the defendant pleaded guilty to second degree possession of a firearm, the prosecutor filed a motion seeking to enhance the sentence under New Jersey's "hate crimes" law. *Id.* The law provided for an extended term of imprisonment if the trial court found, by a preponderance of the evidence, that the defendant acted with the purpose to intimidate an individual or group because of an impermissible bias. The trial court found that the defendant had acted with racial bias and imposed a twelve-year sentence, which was two years longer than the maximum term allowed for a second degree felony. *Id.* at 2350. The Supreme Court reversed the sentence, holding that the hate crimes statute defined an element of a

criminal offense and, as such, due process required that a jury find beyond a reasonable doubt that the defendant acted with the purpose to intimidate. *See id.* at 2364. The Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2362–63. In reaching its holding, the Court distinguished and upheld the trial court's traditional discretion to consider factors relating both to the offense and the offender in imposing a sentence within the range set by statute. *Id.* at 2358.

■ {13} The crux of Defendant's challenge to the New Mexico sentencing scheme is her argument that the maximum sentence authorized by a jury's verdict is the basic sentence prescribed by Section 31–18–15. If Defendant's interpretation of Section 31–18–15 were correct, aggravation of the basic sentence under Section 31–18–15.1 would be unconstitutional because it allows a trial court, rather than a jury, to increase a maximum sentence based on facts found by a standard below that of "beyond a reasonable doubt." *Apprendi*, 120 S.Ct. at 2356. After reviewing the language and history of the New Mexico Criminal Sentencing Act, our court rules and forms, prior case law, and the common practices of New Mexico sentencing courts, we conclude that the Legislature intended that Sections 31–18–15 ·and 31–18–15.1 create a range of sentences within which a court may exercise discretion as long as the discretion is supported by the required statement of reasons on the record. In addition, our reading of the *Apprendi* opinion, United States Supreme Court decisions preceding *Apprendi*, and recent cases applying the decision to federal and state sentencing schemes lends support to our conclusion because the findings required by Section 31–18–15.1 appear more like sentencing factors than elements of a crime.

*1. Sections 31–18–15 and 31–18–15.1 define a permissible range of sentences*

■ {14} In scrutinizing the constitutionality of Section 31–18–15.1, we apply established rules of statutory construction.

*State v. Segotta*, 100 N.M. 498, 500, 672 P.2d 1129, 1131 (1983). First, we presume the statute to be constitutional. *Id.* When possible, we give effect to the clear and unambiguous language of a statute. *See id.; State v. Adam M.*, 2000–NMCA–049, ¶ 5, 129 N.M. 146, 2 P.3d 883. We read the provisions of a statute "together with statutes pertaining to the same subject and seek to achieve a harmonious result." *State v. Lopez*, 2000–NMCA–001, ¶ 5, 128 N.M. 450, 993 P.2d 767; *see also Key v. Chrysler Motors Corp.*, 121 N.M. 764, 769, 918 P.2d 350, 355 (1996).

{15} Section 31–18–15 prescribes the basic sentences for all non-capital felonies. Under Section 31–18–15(B), the basic sentence "shall be imposed ... unless the court alters such sentence pursuant to the provisions of Section 31–18–15.1 [or other provisions]." Section 31–18–15.1 mandates that the trial court hold a sentencing hearing in every case to determine whether mitigating or aggravating circumstances exist. *See Tomlinson v. State*, 98 N.M. 213, 214–15, 647 P.2d 415, 416–17 (1982) (stating that the hearing is mandatory). The procedure by which the court may deviate from the basic sentence prescribed by Section 31–18–15 is as follows:

A. The court shall hold a sentencing hearing to determine if mitigating or aggravating circumstances exist and take whatever evidence or statements it deems will aid it in reaching a decision. The court may alter the basic sentence as prescribed in Section 31–18–15 NMSA 1978 upon a finding by the judge of any mitigating or aggravating circumstances surrounding the offense or concerning the offender. If the court determines to alter the basic sentence, it shall issue a brief statement of reasons for the alteration and incorporate that statement in the record of the case.

. . .

C. The amount of the alteration of the basic sentence for noncapital felonies shall be determined by the judge. However, in no case shall the alteration exceed one-third of the basic sentence. . . .

That the Section 31–18–15.1 hearing is mandatory in all cases and a sentencing court is required to consider aggravating and miti-

gating circumstances before imposing any felony sentence provides strong support for our conclusion that Sections 31–18–15 and 31–18–15.1 must be read together to create permissible ranges of sentences, with the basic sentences prescribed by Section 31–18–15 being the midpoints of these ranges.

{16} This conclusion is further supported by a comparison of Section 31–18–15.1 with the other provisions in the Criminal Sentencing Act that allow deviation from the basic sentence. Because the Section 31–18–15.1 hearing is mandatory in every criminal sentencing proceeding, no facts other than the fact of the conviction are necessary to trigger the trial court's consideration of aggravating and mitigating circumstances. By contrast, NMSA 1978, § 31–18–16 (1993) (firearm enhancement), NMSA 1978, § 31–18–16.1 (1993) (vulnerable victim enhancement), and NMSA 1978, § 31–18–17 (1993) (habitual offender enhancement) all require proof of an additional fact before they become applicable to a sentencing determination. *See, e.g.,* § 31–18–16(A) ("[w]hen a separate finding of fact by the court or jury shows that a firearm was used"). For this reason, we have held that these mandatory enhancement provisions provide a separate and distinct basis for further altering the basic sentence beyond that which is allowed by Section 31–18–15.1. *State v. Hall,* 107 N.M. 17, 25–26, 751 P.2d 701, 709–10 (Ct.App.1987). The outer limits of sentencing, without additional specific fact-finding, is the basic sentence plus a one-third increase under Section 31–18–15.1.

{17} The real question, however, is whether the Legislature intended Section 31–18–15 to operate as the statutory limit on sentencing for a crime with Section 31–18–15.1, as well as the mandatory enhancements, being additions, or whether the Legislature instead intended Sections 31–18–15 and 31–18–15.1 to create a range within which sentencing courts could exercise discretion. On this question, the legislative history behind Sections 31–18–15 and 31–18–15.1 strongly evinces a legislative intent that the two provisions be read together to prescribe a range of permissible sentences.

{18} Prior to 1977, New Mexico used an indeterminate sentencing scheme, under which, for example, a defendant convicted of a second degree felony was sentenced to a term of "not less than ten [10] years nor more than fifty [50] years." NMSA 1953, § 40A–29–3(B) (1963). Under this scheme, a trial court lacked discretion to impose any term of years other than the minimum and maximum provided by law. *See State v. Hovey,* 87 N.M. 398, 399, 534 P.2d 777, 778 (Ct.App.1975). The actual time served by a defendant was determined by the parole board: prisoners generally became eligible for a parole hearing after serving one-third of the minimum sentence. NMSA 1953, § 41–17–24 (1955). For a second degree felony, therefore, a defendant might serve an actual sentence ranging from three and one-third years to fifty years, less credit for good time off the maximum. *See, e.g.,* NMSA 1953, § 42–1–54 (1957).

{19} In 1977, the Legislature passed the "Criminal Sentencing Act," a determinate sentencing scheme which created a range of sentences within which a trial court could set a definite term of imprisonment. 1977 N.M. Laws, ch. 216, § 4. Using the same example as above, for a second degree felony, a court could sentence a defendant to a "definite term of not less than seven years nor more than fifteen years." *Id.* Under this scheme, the Legislature transferred the authority to set a defendant's actual term of imprisonment from the parole board to the sentencing court. *Id.* §§ 4, 12.

{20} In 1979, the Legislature amended the Act by replacing the ranges with basic sentences and adding Section 31–18–15.1, with its provision allowing an increase or decrease of up to one-third of the basic sentence upon a finding of aggravating or mitigating circumstances. 1979 N.M. Laws, ch. 152, §§ 1–2. The basic sentence thus became a presumptive sentence subject to alteration. Under this scheme, a defendant convicted of a second degree felony would be subject to a presumptive term of nine years imprisonment, with the sentencing court retaining the discretion to determine the actual definite term within the range of six to twelve years. *Id.* The amendment also added the requirement that a sentencing judge give reasons for departing from the basic sentence, which

appears designed to protect criminal defendants by subjecting the court's discretion to some standards and some minimum appellate review. *Id.* § 2; *see also* § 31–18–15.1(A).

{21} In reviewing the history of sentencing in New Mexico, we conclude that the authority of the sentencing court, namely to determine where within the range a particular criminal defendant should be sentenced, has not changed since the 1977 amendment implemented determinate sentencing within a range of years and gave the trial court the authority to impose a sentence of a definite term of years within that range. Rather, we understand the current scheme to be a means of protecting defendants, in a way that was not present from 1977 to 1979, from arbitrary sentencing decisions without the possibility of any appellate review.

{22} We deem it noteworthy that both this Court and the New Mexico Supreme Court, in first ruling on the constitutionality of Sections 31–18–15 and 31–18–15.1, referred to them as creating a range of permissible sentences, as in the Colorado system. *See State v. Mead*, 100 N.M. 27, 36, 665 P.2d 289, 298 (Ct.App.1983), *rev'd on other grounds by Segotta*, 100 N.M. at 501, 672 P.2d at 1132. The Supreme Court continued to refer to the "presumptive range" created by the statutes as late as last year. *See State v. Bonilla*, 2000–NMSC–037, ¶ 10, 130 N.M. 1, 15 P.3d 491. In addition, sentencing courts typically inform defendants that a sentence may "range," for example, from two to four years for a third degree felony. *See State v. Smith*, 110 N.M. 534, 535, 797 P.2d 984, 985 (Ct.App.1990); *see also* Form 9–408 NMRA 2001—Use Note 3; Rule 5–303(E)(2) NMRA 2001 (requiring court accepting guilty plea to inform defendant of "the mandatory minimum penalty ... and the maximum possible penalty provided by law for the offense to which the plea is offered").

{23} Sentencing under the 1977 version of the Act, with its explicit reference to ranges of sentences, would be constitutional under the *Apprendi* decision. The 1979 amendments merely opened the sentencing process to some potential appellate review, a change that benefits criminal defendants in New Mexico. Defendant's position, that Section 31–18–15.1 should be read in isolation from Section 31–18–15, would require us to hold that the Legislature's provision for a separate sentencing hearing and written findings subject to appellate review—the Legislature's protection against arbitrarily determined terms of incarceration—is the very feature that makes New Mexico's sentencing scheme unconstitutional. This result is illogical and not in keeping with the reasoning behind the *Apprendi* decision. *See Apprendi*, 120 S.Ct. at 2365 (noting that sentencing statutes should be evaluated based on their effect, not their form); *see also McMillan v. Pennsylvania*, 477 U.S. 79, 90, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) ("That Pennsylvania's particular approach [to sentencing] has been adopted in few other States does not render Pennsylvania's choice unconstitutional.").

*2. Section 31–18–15.1 does not define the elements of a crime*

{24} Defendant's argument that Section 31–18–15 prescribes the maximum sentence authorized by the jury's verdict would require us to hold that Section 31–18–15.1 states the elements of an offense, rather than a procedure for evaluating traditional sentencing factors. In several cases preceding *Apprendi*, the United States Supreme Court analyzed sentencing statutes based on whether the legislature intended to define a particular fact as an element of the crime or as a sentencing factor. *See Castillo v. United States*, 530 U.S. 120, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000); *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). "Traditional sentencing factors often involve either characteristics of the offender, such as recidivism, or special features of the manner in which a basic crime was carried out (e.g., that the defendant abused a position of trust or brandished a gun)." *Castillo*, 120 S.Ct. at 2094. If the fact is an element rather than a sentencing factor, the fact must be tried to jury and proved beyond a reasonable doubt. *See Apprendi*, 120 S.Ct. at 2365 n. 19.

{25} Section 31–18–15.1 allows the trial court to consider "whatever evidence or statements it deems will aid it" in determining the existence of "any mitigating or aggravating circumstances surrounding the offense or concerning the offender." It is difficult to read this provision as stating the elements of a crime. The statute does not enumerate what facts must be considered, and our case law allows the court discretion to consider almost any relevant factor or evidence in determining the appropriate sentence. *See Segotta*, 100 N.M. at 501, 672 P.2d at 1132. In fact, the language of Section 31–18–15.1 practically mirrors the *Apprendi* Court's definition of sentencing factors. *Compare Apprendi*, 120 S.Ct. at 2358 (noting that it is permissible for judges to consider "various factors relating both to offense and offender") *with* § 31–18–15.1(A) (allowing court to consider any evidence "surrounding the offense or concerning the offender").

{26} In reviewing the many federal and state cases interpreting the *Apprendi* opinion, we could find no cases holding that a sentencing scheme like Sections 31–18–15 and 31–18–15.1 is unconstitutional. Notably, the sentencing schemes that have been evaluated under *Apprendi* share two characteristics which distinguish them from our Criminal Sentencing Act: (1) to varying degrees of specificity, the statutes in question in these cases enumerate or define the factors that must be found, and (2) the schemes explicitly set ranges of basic sentences, much like New Mexico's 1977 law, that serve as the starting point of *Apprendi* analysis. Because these ranges are explicit, the question before the courts is simply whether a particular factual finding results in a sentence above the basic range.

{27} For example, federal cases have dealt primarily with whether the quantity of drugs possessed by a defendant is an element or a sentencing factor under 21 U.S.C. § 841 (1997), which provides a basic penalty for possession as well as an increased penalty for possession of a greater quantity of narcotics. The courts have consistently held that when drug quantity is used to determine where to sentence a defendant within the range available for the basic offense, *Apprendi* does not apply because the quantity is being used as a sentencing factor. *See United States v. Aguayo–Delgado*, 220 F.3d 926, 934 (8th Cir. 2000); *United States v. Munoz*, 233 F.3d 410, 413–14 (6th Cir.2000); *United States v. Doggett*, 230 F.3d 160, 164–65 (5th Cir.2000); *United States v. Williams*, 235 F.3d 858, 862–63 (3rd Cir.2000). However, if the quantity is used to trigger the increased penalty, quantity is treated as an element of the crime, which must be charged and submitted to the jury. *See United States v. Nordby*, 225 F.3d 1053, 1058–59 (9th Cir.2000); *United States v. Sheppard*, 219 F.3d 766, 768 (8th Cir.2000); *United States v. Flowal*, 234 F.3d 932, 936 (6th Cir.2000). Unlike the general consideration of any evidence relating to the offense or offender required by Section 31–18–15.1, 21 U.S.C. § 841 specifies that drug quantity is a fact at issue in sentencing. Because the specific fact at issue in 21 U.S.C. § 841 is identified, federal courts are able to conduct a meaningful review of the effect of this fact on sentencing and to determine whether the quantity is being used as a sentencing factor or an element. Given that Section 31–18–15.1 does not identify the fact or facts to be considered in sentencing within the range, it is difficult to contemplate reading Section 31–18–15.1 as defining anything resembling an element of a crime.

{28} State cases decided since *Apprendi* are similar. In each case, the sentencing court was asked to consider a specific fact or facts to determine whether to sentence a defendant to an enhanced sentence that was beyond the range allowed for the underlying felony. *See People v. Thurow*, 318 Ill.App.3d 128, 252 Ill.Dec. 342, 742 N.E.2d 880, 884–85 (2001) (invalidating statute which allowed court to impose a Class 2 felony sentence on defendant convicted of a Class 3 felony based on a finding that the victim was a household member); *People v. Beachem*, 317 Ill.App.3d 693, 251 Ill.Dec. 308, 740 N.E.2d 389, 398–99 (2000); *State v. Grossman*, 622 N.W.2d 394, 399 (Minn.Ct.App.2001) (invalidating statute which allowed court to increase maximum sentence for sex offender based on findings that the defendant was a "danger to public safety" and a "patterned sex offender"); *State v. Guice*, 541 S.E.2d 474, 482 (N.C.Ct. App.2000) (invalidating a firearm enhance-

ment statute similar to Section 31–18–16, because statute allowed court to increase sentence based on finding by preponderance of the evidence). In each of these cases, when the court was required to make a specific factual finding, the appellate court determined that those findings were elements of aggravated offenses under *Apprendi*. In reaching these decisions, the courts acknowledged and identified a basic sentencing range from which to evaluate the defendant's *Apprendi* challenge.

{29} Unlike the sentencing schemes at issue in these federal and state cases, which apply only to defendants convicted of particular crimes under particular circumstances, Sections 31–18–15 and 31–18–15.1 apply to every criminal defendant convicted of a non-capital felony in New Mexico. Regardless of the specifics of the crime or the characteristics of the defendant, all defendants convicted of a first degree felony, whether by plea or jury verdict, are subject to a sentence of between twelve and twenty-four years imprisonment. The specifics of the crime and the characteristics of the defendant are relevant only to the sentencing court's exercise of its discretion to sentence the defendant to an appropriate term within this range. As such, we conclude that New Mexico sentencing law and practice are consistent with the *Apprendi* decision. As the *Apprendi* opinion made clear,

> nothing in this history suggests that it is impermissible for judges to exercise discretion-taking into consideration various factors relating both to offense and offender-in imposing judgment *within the range* prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case.

120 S.Ct. at 2358. Because Defendant's sentence was within the range prescribed for first-degree felonies, we hold that the sentence is constitutional under *Apprendi*.

## B. Aggravating Circumstances

{30} Defendant argues that the trial court abused its discretion by using "lack of remorse" and "initial and continued decep-

tion" as aggravating circumstances justifying an increase in Defendant's basic sentence. Defendant concedes that she failed to preserve this issue below, but asserts that a defendant may challenge the legality of a sentence for the first time on appeal. We take this opportunity to clarify that not all sentencing issues may be raised for the first time on appeal. We hold that, because Defendant failed to object at sentencing, the issue is not properly before us.

{31} While it is true that the issue of whether a sentence was authorized by statute is jurisdictional and may be raised for the first time on appeal, *see State v. Jensen*, 1998–NMCA–034, ¶ 6, 124 N.M. 726, 955 P.2d 195, this narrow exception to the rules of preservation does not extend to all sentencing issues, *see id.* ¶ 15 (holding that the defendant's failure to preserve objection to materials considered by court in sentencing precluded review except under fundamental error analysis); *see also State v. Sosa*, 122 N.M. 446, 448, 926 P.2d 299, 301 (1996) (refusing to consider claim that trial court violated defendant's Fifth Amendment rights by aggravating sentence based on failure to name drug source because argument not preserved below).

{32} The rules of preservation are not mere technicalities, but serve an important function in appellate review. Particularly in cases such as the one at bar, the requirements that a party object at trial and invoke a ruling from the trial court insure that the record is adequate for meaningful review and give the trial court an opportunity to correct any alleged errors. The case at bar is an excellent example of the dangers of failing to preserve an issue. Had Defendant alerted the court to the claim of error, the trial court could have explained its reasoning behind each factor and explained the weight afforded to each, such that we would not "have to guess at what was and what was not an issue at trial." *State v. Lucero*, 116 N.M. 450, 453, 863 P.2d 1071, 1074 (1993). In addition, the trial court would have had an opportunity to correct any error by explicitly relying on the other five factors or changing Defendant's sentence. "'We require parties to assert the legal principle upon which their claims are

based and to develop the facts in the trial court primarily ... to alert the trial court to a claim of error so that it has an opportunity to correct any mistake.'" *State v. Harrison*, 2000–NMSC–022, ¶ 28, 129 N.M. 328, 7 P.3d 478 (quoting *State v. Gomez*, 1997–NMSC– 006, ¶ 29, 122 N.M. 777, 932 P.2d 1).

{33} Even if we were to reach this issue, however, we would affirm. We reject Defendant's contention that these aggravating circumstances were based on Defendant's refusal to admit guilt. The evidence showed that Defendant had deceived emergency room personnel and law enforcement personnel by not telling them her version of events and waited almost a week to inform her husband of her part in the victim's death. In addition, her testimony was incompatible with expert testimony. Even under Defendant's version of events, Defendant admits that her actions contributed to the victim's death. Defendant could have assumed responsibility for her role without recanting her defense theories. The trial court was entitled to rely on Defendant's inability to accept this responsibility as a basis for aggravating her sentence.

### C. Sufficiency of the Evidence

{34} Defendant argues that the evidence introduced at trial was insufficient to support her conviction for child abuse resulting in death. We disagree. In reviewing the sufficiency of evidence used to support a conviction, we determine whether substantial evidence exists to support a finding of guilt beyond a reasonable doubt for every element essential to the conviction. *See State v. Rojo*, 1999–NMSC–001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We resolve all disputed facts in favor of the State, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary. *Id.* Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject Defendant's version of the facts. *Id.*

{35} According to Section 30–6–1(C), abuse of a child "consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be ... (1) placed in a situation that may endanger the child's life or health [or] (2) tortured, cruelly confined or cruelly punished." At trial, the State bore the burden of proving that Defendant knew or should have known of the danger created by her actions and that she acted with a reckless disregard for the child's safety and health. *See Santillanes v. State*, 115 N.M. 215, 219–21, 849 P.2d 358, 362–64 (1993); *State v. Sheldon*, 110 N.M. 28, 29, 791 P.2d 479, 480 (Ct.App.1990). At the same time, "[i]t is established law in this jurisdiction, as elsewhere, that a properly instructed jury may be justified in returning a guilty verdict based primarily on evidence that the defendant had the best opportunity to inflict the injury." *State v. Aguayo*, 114 N.M. 124, 127, 835 P.2d 840, 843 (Ct.App.1992); *see also State v. Pennington*, 115 N.M. 372, 383, 851 P.2d 494, 505 (Ct.App.1993) (holding that circumstantial evidence may support guilty verdict).

{36} In *Sheldon*, we upheld a defendant's conviction where medical testimony established that the victim had suffered skull fractures on both sides of the head, and medical experts rejected the defendant's explanation that the injuries could have been caused by a child flipping or jumping into a playpen where the victim was sleeping. 110 N.M. at 28–29, 791 P.2d at 479–80. On those grounds, we held that the defendant's conviction was supported by substantial evidence. *See id.* at 30, 791 P.2d at 481.

{37} In the case at bar, as in *Sheldon*, the medical testimony established that the victim suffered a skull fracture to the back of his head, the victim's injury resulted from extraordinarily substantial force, Defendant was the only person in the household at the time the victim was injured who was physically capable of inflicting the victim's injury, Defendant admitted tossing the victim back into the victim's bed and hearing the victim's head hit something, and there was medical testimony that Defendant's explanations of how the victim sustained his fatal injury were medically unacceptable. These facts are sufficient to sustain Defendant's conviction. *See id.; Aguayo*, 114 N.M. at 127, 835 P.2d at 843.

### D. Improper Rebuttal Witness

{38} Defendant complains that the trial court abused its discretion by allowing Dr. Karen Campbell to give rebuttal testimony that Defendant claims was essentially direct testimony, and thus resulted in the State restating its case. The State counters that not only was the testimony proper rebuttal evidence, but also informs us that the trial court allowed the testimony in part because Defendant was twelve days late in producing a videotaped re-enactment of Defendant's version of the events leading up to the victim's death. The trial court concluded that Defendant's failure to produce the videotape until the day before trial prevented the State from presenting an expert in child injuries in its case in chief. As such, the court admitted the testimony both as genuine rebuttal of the defenses presented at trial and as a remedy for Defendant's late disclosure.

{39} The admission of rebuttal evidence is within the discretion of the trial court and will not be disturbed absent an abuse of that discretion. *State v. Simonson*, 100 N.M. 297, 302, 669 P.2d 1092, 1097 (1983). Similarly, remedies for violation of discovery rules or orders are discretionary with the trial court. *State v. Deutsch*, 103 N.M. 752, 756, 713 P.2d 1008, 1012 (Ct.App. 1985). We conclude that the trial court did not abuse its discretion in allowing Dr. Campbell's rebuttal testimony.

{40} The case upon which Defendant relies to support her argument that the testimony was improper rebuttal evidence, *Wright v. State*, 349 Md. 334, 708 A.2d 316 (1998), is distinguishable from the case at bar. In *Wright*, the prosecution saved for rebuttal the testimony of the defendant's cellmate that the defendant had confessed to the crime. *Id.* at 319. The prosecution argued that the testimony was admissible on rebuttal to impeach the defendant because the defendant had testified that he had never made the confession. *Id.* at 322. The court of appeals rejected this argument, reasoning that because the testimony was admissible in the state's case in chief and bore directly on the defendant's guilt, the state should have offered the testimony in its case in chief. *Id.* at 323. The court concluded that the only

reason for delaying the introduction of the confession was to gain a tactical advantage. *Id.*

{41} In the case at bar, Dr. Campbell's rebuttal testimony did not bear as directly or dramatically on Defendant's guilt, but was offered to rebut two defense theories of how the victim sustained his injuries. First, through Defendant's own testimony and the videotaped re-enactment, Defendant presented the defense that she had playfully tossed the victim onto the bed, accidentally causing the injuries that resulted in the victim's death. Dr. Campbell testified that the victim's injuries could not have been caused in the manner claimed by Defendant. Defendant's second theory was that the victim had suffered a prior head injury that was exacerbated or "reactivated" when Defendant tossed the victim onto the bed. Dr. Campbell testified that the prior injury had nothing to do with the victim's death. The State was entitled to present evidence rebutting Defendant's theories. *See Simonson*, 100 N.M. at 302, 669 P.2d at 1097. In addition, we reject Defendant's argument that Dr. Campbell's testimony was improper because her testimony overlapped with testimony given by another expert during the State's case in chief. *See id.* ("Frequently true rebuttal evidence, in some degree, will overlap and coincide with the evidence in the State's case-in-chief.").

{42} Finally, we hold that the trial court did not abuse its discretion by admitting Dr. Campbell's testimony as a remedy for Defendant's late disclosure of the videotaped re-enactment. Since the State did not have access to the videotape until the day before trial, it was well within the trial court's authority to afford the State an opportunity to call Dr. Campbell.

### CONCLUSION

{43} For the foregoing reasons, we affirm.

{44} **IT IS SO ORDERED.**

I CONCUR: RICHARD C. BOSSON, Chief Judge, BUSTAMANTE, Judge (concurring in part and dissenting in part).

BUSTAMANTE, Judge (concurring in part and dissenting in part).

{45} Believing that the majority misconstrues the core holding of *Apprendi*, I dissent. In light of this dissenting position on the issue of aggravating circumstances, I need not address Defendant's second issue. I concur with the majority opinion with regard to Defendant's issues concerning the sufficiency of the evidence and the rebuttal witness.

{46} The majority frames the *Apprendi* issue correctly—that is, whether the "maximum sentence authorized by a jury's verdict is the basic sentence prescribed by Section 31–18–15." But then its analysis of *Apprendi* and our statutory scheme focuses solely on the notion of statutory maximum and ignores the role the jury as fact finder plays in driving *Apprendi's* holding.

{47} The core concern of the Court in *Apprendi* is the constitutional right to trial by jury and proof to a jury beyond a reasonable doubt of all facts allowing imposition of the statutory maximum sentence. The Supreme Court starts its analysis with this proposition. 120 S.Ct. at 2355–56. The Court then provides an historical perspective showing that until quite recently, the punishment which could be expected after trial was clear from the face of the indictment submitting the case to the jury. *Id.* at 2357–58. The Court concludes that the Constitution still requires a direct link between the facts found by the jury and the ultimate punishment imposed. The state may not structure its scheme in a way "that keeps from the jury facts that 'expos[e] [defendants] to greater or additional punishment'" without raising serious constitutional concerns. *Id.* at 2360, (quoting *McMillan*, 477 U.S. at 88).

{48} The central role of jury fact finding is illustrated by the Supreme Court's majority's responses to Justice O'Connor's dissent. For example, responding to the dissent's reliance on *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) for the notion that judicial discretion in sentencing has been long recognized to allow upward adjustment, the majority states: "Nothing in *Williams* implies that a judge may impose a more severe sentence than the maximum authorized by the facts found by the jury." *Apprendi*, 120 S.Ct. at 2358 n. 9.

{49} Later, responding to the dissent's "novel view" that the Supreme Court has long recognized that not all facts affecting punishment need go to the jury, the majority concludes from its review of the same evidence that: "The judge's role in sentencing is constrained at its outer limits by the facts alleged in the indictment and found by the jury. Put simply, facts that expose a defendant to a punishment greater than that otherwise legally prescribed were by definition 'elements' of a separate legal offense." *Id.* at 2359 n. 10.

{50} In a passage closely related to this thought, the Court also notes:

> The historic link between verdict and judgment and the consistent limitation on judges' discretion to operate within the limits of the legal penalties provided highlight the novelty of a legislative scheme that removes the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone.

*Id.* at 2359.

{51} These statements by the Court—coupled with its repeated citation to *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)—make clear that the Court's holding is grounded on Sixth and Fourteenth Amendment requirements. Punishment imposed by the judge must flow from and is bounded by the measure allowed pursuant to the jury's verdict and factual findings. Punishment beyond that allowed by the jury verdict alone is not permissible if new or other facts need to be found because those facts are necessarily not determined by the jury beyond a reasonable doubt.

{52} Analyzing New Mexico's sentencing scheme from this perspective compels the conclusion that it does not comply with the constitution as interpreted in *Apprendi*. Section 31–18–15(A) and (B) provides:

> A. If a person is convicted of a noncapital felony, the basic sentence of imprisonment is as follows:

(1) for a first degree felony, eighteen years imprisonment;

(2) for a second degree felony resulting in the death of a human being, fifteen years imprisonment;

(3) for a second degree felony, nine years imprisonment;

(4) for a third degree felony resulting in the death of a human being, six years imprisonment;

(5) for a third degree felony, three years imprisonment; or

(6) for a fourth degree felony, eighteen months imprisonment.

B. The appropriate basic sentence of imprisonment shall be imposed upon a person convicted of a first, second, third or fourth degree felony or a second or third degree felony resulting in the death of a human being, unless the court alters such sentence pursuant to the provisions of Section[s] 31–18–15.1, 31–18–16, 31–18–16.1 or 31–18–17 NMSA 1978.

Absent application of an enhancement, the jury verdict can only result in imposition of the statute's "basic sentence" less mitigation. In order to impose any sentence greater than the basic sentence, there must be additional facts found, thus the problem under *Apprendi* with our statute.[1]

{53} Put another way, under Section 31–18–15, the jury verdict itself cannot result in a sentence greater than the basic sentence for each level of felony absent a factual finding supporting an enhancement. Thus, the Section 31–18–15 basic sentence is the maximum sentence which can be imposed based on the jury verdict alone. Section 31–18–15.1 allows enhancement of the sentence beyond what the jury verdict by itself allows based on facts "found" under no discernable standard of proof. Under *Apprendi* and *In re Winship*, factual findings supporting enhancement beyond the maximum sentence tied to the jury verdict cannot be made by a judge alone and certainly cannot be made by

a standard less than beyond a reasonable doubt.

{54} The majority's historical review is unavailing. Even if the legislature intended to treat Section 31–18–15.1 enhancements differently from those in Sections 31–18–16 and –16.1 and impose a range of sentence, the inescapable fact is that the upper reaches of the range can only be imposed after additional non-jury fact finding done under no standard of proof. *Apprendi* holds that that process is unconstitutional. Pointing to the mandatory nature of the sentencing hearing merely begs the question of its constitutionality.

{55} In any event, I do not agree with the majority's historical analysis or its approach to statutory construction. First, our case law indicates that New Mexico regards Section 31–18–15.1 enhancements to be like any other sentence enhancement. Our Supreme Court, in *Caristo v. Sullivan*, 112 N.M. 623, 818 P.2d 401 (1991), discussed Section 31–18–15.1 in the context of determining what sort of notice is required before the State may seek to increase the basic sentence prescribed by Section 31–18–15. The Court held that "under Section 31–18–15.1 a defendant must be given notice of the state's intention to seek aggravation and of the aggravating circumstances on which it intends to rely, unless the circumstance was itself an element of the underlying offense or a fact used to establish such an element." *Caristo*, 112 N.M. at 631–32, 818 P.2d at 409–10. In so holding, Justice Montgomery relied on the long-established principle set out in *State v. Rhodes*, 76 N.M. 177, 181, 413 P.2d 214, 217 (1966), that "essential fairness requires that there be some pleading filed by the state ... by which a defendant is given notice and opportunity to be heard **before an increased penalty can be imposed.**" (Emphasis added.) *Caristo*, 112 N.M. at 631, 818 P.2d at 409. The Court further relied on cases requiring notice before an enhanced sentence may be imposed pursuant to NMSA 1978, § 30–16–2

---

1. It should be noted that only Section 31–18–15.1 allows the additional fact-finding to be done by the judge; the other two enhancement provisions require the factual issue to be submitted to the jury. NMSA 1978, § 31–18–16 and § 31–18–16.1 (1993). Of course, our habitual offender determinations are done by the court and for the time being pass *Apprendi* muster. NMSA 1978, § 31–18–17 (1993). But, the Supreme Court itself is not entirely sure that recidivist determinations are not covered by its rationale in *Apprendi*.

(1973) (enhancement when a person commits a second or subsequent armed robbery), NMSA 1978, § 31–18–16.1 (1980) (enhancement for injury to person sixty years of age or older), NMSA 1978, §§ 31–20A–2, –5 (1979) (aggravating circumstances for imposition of the death penalty), and NMSA 1953, § 40A–29–3.1 (1972) (enhancement for use of a firearm under former law). Clearly, in *Caristo,* our Supreme Court viewed imposition of an aggravated sentence under Section 31–18–15.1 as an enhancement or increase of the basic sentence prescribed by Section 31–18–15.

{56} Second, the language of Section 31–18–15(B) is best interpreted to mean that aggravation of the basic sentence pursuant to Section 31–18–15.1 is an enhancement-like any other enhancement-of the basic sentence. Section 31–18–15(B) provides as follows:

> B. The appropriate basic sentence of imprisonment shall be imposed upon a person convicted of a first, second, third or fourth degree felony or a second or third degree felony resulting in the death of a human being, unless the court alters such sentence pursuant to the provisions of Section[s] 31–18–15.1, 31–18–16, 31–18–16.1 or 31–18–17 NMSA 1978.

The other statutory provisions listed together with Section 31–18–15.1 are also enhancement statutes: firearm enhancement (§ 31–18–16), enhancement for injury to a person sixty years of age or older (§ 31–18–16.1), and habitual enhancement (§ 31–18–17). The contextual meaning of a word in a statute is often determined by its neighbors. Under this canon of statutory construction, aggravation of a basic sentence pursuant to Section 31–18–15.1 should be viewed as an enhancement, since it is included in a list of other enhancement statutes authorizing increases in the basic sentence prescribed by Section 31–18–15(A). *See In re Christopher K,* 1999–NMCA–157, ¶ 3, 128 N.M. 406, 993 P.2d 120 (holding that the term "counsel" as used in the following list: "the child, parent, guardian, custodian, or counsel" does not refer to the children's court attorney, since all of the other persons listed are allied exclusively with the child).

{57} If Section 31–18–15.1 enhancements are the same as other non-recidivism-based enhancements, why are they then not subject to jury proof beyond a reasonable doubt? The notion that Sections 31–18–15 and –15.1 together create a range of sentences does not answer the jury fact-finding problem. Contrary to the majority's observation, the 1979 amendments changed our sentencing laws dramatically—why it did so need not be debated in this context.[2]

{58} Finally, the majority's argument that Section 31–18–15.1 factors are traditional sentencing factors and do not define the elements of a crime is unconvincing. The argument is necessarily made in a vacuum since Section 31–18–15.1 lists no factors. Thus in some cases the aggravating circumstances might be classic elements such as premeditation, viciousness, motive, or lack of regard for the consequences of acting. More importantly, *Apprendi* roundly refuted the nature-of-the-factor arguments. It made clear that regardless of the inquiry, any factual determinations used to increase a sentence beyond the maximum sentence is the functional equivalent of an element of the crime—or a greater crime since punishment is being increased. *Apprendi,* 120 S.Ct. at 2365. In addition, the Court emphasized that the due process and jury trial concerns supporting its decision addressed matters beyond just guilt and innocence. They also implicate factors affecting the length of sentence and the measure of the degree of criminal culpability. *Id.* at 2359–60. The basic sentence is not just a presumptive sentence, it is the only sentence supported by the jury verdict absent additional fact-finding.

{59} I conclude that enhancement of the basic sentence pursuant to our aggravation statute, Section 31–18–15.1, constitutes an increase in the penalty beyond the prescribed statutory maximum set out under Section 31–18–15(A). Therefore, I would hold that Section 31–18–15.1 is unconstitutional under *Apprendi* insofar as it allows a judge, rather

---

**2.** Nonetheless, the irony that the 1977 statute would probably be acceptable under *Apprendi* is not lost on me.