2003-NMCA-009

62 P.3d 348

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Kevin BADONI, Defendant–Appellant.**

**No. 21,924.**

Court of Appeals of New Mexico.

Nov. 27, 2002.

Certiorari Denied, No. 27,840,
Jan. 15, 2003.

**258**

Patricia A. Madrid, Attorney General, Santa Fe, NM, Joel Jacobsen, Assistant Attorney General, Albuquerque, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Theresa M. Duncan, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

*OPINION*

CASTILLO, Judge.

{1} This is an appeal from Defendant's second trial wherein he was convicted of second degree murder of Sylvester Lewis and aggravated battery on Wesley Eaton. Defendant makes two arguments on appeal: (1) that the trial court erred by denying his request for a modified version of UJI 14–5031 NMRA 2002 (prohibiting jury inference of guilt from failure to testify); and (2) that the trial court erred in enhancing his sentence because the criminal information did not charge Defendant with firearm use or notify Defendant that the State would seek a firearm enhancement under NMSA 1978, § 31–18–16 (1993). We hold that Defendant did not sufficiently preserve the jury instruction issue, and in any event failed to demonstrate that the denial of his requested instruction prejudiced him. We further hold that the court did not err in enhancing Defendant's sentence based on use of a firearm in this case. We therefore affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

{2} Defendant was initially charged in 1998 with four counts: one open count of murder, two counts of attempted murder "by any of the means with which death may be caused," and tampering with evidence for disposing of a .380 handgun. All of the charges resulted from a confrontation in Farmington between two groups of young men during which Lewis was killed and Eaton and Gabriel Johnson were seriously wounded by gunshots. At the first trial, Defendant pled self-defense; he admitted to firing his gun at the victims, believing they had guns and fearful that he or his companions would be shot by the victims. The firearm itself was not recovered. At Defendant's first trial, the jury hung on the murder count and on one count of attempted murder. Defendant was convicted of evidence tampering and acquitted of attempted murder of Johnson. Through a special verdict, the jury determined that a firearm was not used in the commission of the attempted murder for which Defendant was acquitted. Defendant made no objection to the use of the special verdict.

{3} At the retrial of the charges concerning Lewis and Eaton, Defendant's tape recorded testimony from the first trial was played. Defendant did not take the witness stand at the second trial. During the conference regarding jury instructions, Defendant's attorney requested that UJI 14–5031 be modified. UJI 14–5031 instructs jurors not to draw "any inference of guilt from the fact that the defendant did not testify in this case." The text of the modification, if one was ever suggested, is not in the record. The trial court refused to give a modified UJI 14–5031 but offered to give an unmodi-

fied instruction. At Defendant's request, the unmodified instruction was not given. The trial court instructed the jury with UJI 14–5012 NMRA 2002, stating that it should give the taped testimony "the same consideration as the testimony of witnesses who have testified here in court." Defendant was ultimately convicted of second degree murder and aggravated battery.

{4} Through a special verdict, the jury found that Defendant used a firearm in the commission of these offenses. Defendant's attorney had opposed the use of the special verdict because the use of a firearm was not pled in the murder and attempted murder charges. In deciding to use the special verdict, the trial court indicated that lack of notice was not an issue because Defendant argued self-defense, and a special verdict had already been used at the first trial. Defendant was sentenced to fifteen years imprisonment for the murder conviction, three years for aggravated battery, and eighteen months for tampering with evidence. The murder and aggravated battery sentences were each enhanced by one year due to use of a firearm under Section 31–18–16.

## DISCUSSION

### I. Modified Jury Instruction

{5} Rule 5–608 NMRA 2002 requires that all requested instructions be tendered in writing. *See State v. Savage*, 115 N.M. 250, 254, 849 P.2d 1073, 1077 (Ct.App. 1992). The purpose of the rule "is to allow the court an opportunity to decide a question whose dimensions are not open to conjecture or after-the-fact interpretation." *Gallegos v. State*, 113 N.M. 339, 341, 825 P.2d 1249, 1251 (1992). In general, an appellate court will decline to review claims of error in jury instructions when those instructions are not in the record. *G & G Services, Inc. v. Agora Syndicate, Inc.*, 2000–NMCA–003, ¶ 17, 128 N.M. 434, 993 P.2d 751. The record here includes a transcript and tape log of the jury instruction conference. This record, however, contains no written modified instruction nor is the language of a modified instruction apparent from the transcripts of the jury instruction conference. It appears that the record may be incomplete; a portion of the tapes of the jury instruction conference were

blank. But as neither party has a recollection of that portion of the conference, and because there is no claim that a modified instruction was tendered, we do not believe any record supplementation would affect our review.

{6} Defendant cites several cases holding that an oral request for instruction may suffice for the purposes of preservation. *Gallegos*, 113 N.M. at 341, 825 P.2d at 1251; *State v. Reed*, 62 N.M. 147, 150, 306 P.2d 640, 642 (1957); *State v. Hill*, 2001–NMCA–094, ¶ 7, 131 N.M. 195, 34 P.3d 139; *State v. Diaz*, 121 N.M. 28, 33–34, 908 P.2d 258, 263–64 (Ct. App.1995). However, in each of these cases, the defendant tendered a written, albeit incorrect, instruction that was orally corrected, *Gallegos*, 113 N.M. at 340–41, 825 P.2d at 1250–51; *Hill*, 2001–NMCA–094, ¶ 6, 131 N.M. 195, 34 P.3d 139; *Diaz*, 121 N.M. at 33, 908 P.2d at 263, or orally dictated the instruction in its entirety in chambers, *Reed*, 62 N.M. at 150, 306 P.2d at 641–42. In each case, therefore, the trial judge was aware of the specific language proposed.

{7} Defendant here neither tendered a written instruction nor orally dictated one. The record does not show that Defendant informed the trial judge of the specific language he wanted in a modified instruction or how such an instruction would prevent his claimed jury confusion or prejudice. We conclude that the purpose of Rule 5–608 requiring a tendered written instruction was not met in this case. The issue was not preserved for review.

{8} Moreover, even if the issue were adequately preserved for review, Defendant has not demonstrated any prejudice. Defendant argues to this Court that "Mr. Badoni was entitled to an instruction on his decision not to take the stand at the second trial." We agree, but so did the trial court. At trial, the court offered to give *both* UJI 14–5012 (instructing the jury to give prior recorded testimony the same consideration as live testimony) *and* UJI 14–5031 (instructing the jury not to infer guilt from silence). Defendant agreed that UJI 14–5012 had to come in but would not agree to an unmodified UJI 14–5031. He believed the stock UJI 14–5031 instruction prohibiting the drawing of any

negative inference from Defendant's choice not to testify at the second trial would confuse the jury as to the proper weight to accord Defendant's taped testimony from the first trial. The trial court concluded that Defendant could explain the context to the jury in his final argument.

{9} Defendant has not demonstrated how the trial court's approach, even assuming it was in error, caused Defendant prejudice. Defendant has not shown how his argument to the jury, based on the UJI 14–5012 and an unmodified UJI 14–5031, would have been weaker, less persuasive, or prejudicial to his cause. We hold that the trial court did not abuse its discretion in offering to give the UJI 14–5031 in an unmodified form.

## II. Notice of Firearm Use or of Section 31–18–16

{10} Defendant argues that under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the State is required to give formal notice in the criminal information or indictment (charging instrument) that (1) defendant used a firearm in the commission of the offense, or (2) the State may seek to enhance defendant's sentence under Section 31–18–16, the firearm enhancement statute. We hold that *Apprendi* and *Jones* do not require the prosecution to formally notify a defendant in a charging instrument of either firearm use or that the State may seek firearm enhancement under Section 31–18–16.

### A. Standard of Review

{11} The trial court's ruling on sentence enhancement presents a question of law which we review de novo. *Churchman v. Dorsey*, 1996–NMSC–033, ¶ 10, 122 N.M. 11, 919 P.2d 1076.

### B. Apprendi and Jones

{12} Notice is the sole issue in this case. In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. The record in this case contains a special verdict form in which the jury found beyond a reasonable doubt that Defendant used a firearm in the commission of his crimes. Defendant acknowledges that *Apprendi* does not directly answer his notice issue but claims that *Apprendi*, when read with *Jones*, compels the result he is seeking. In *Jones*, the United States Supreme Court held that, because a federal carjacking statute increased defendant's penalties, the fact of serious bodily injury was an element of the crime requiring a jury finding beyond a reasonable doubt. 526 U.S. at 243–44, 251–52, 119 S.Ct. 1215. Defendant's argument is based on a quote from *Jones* contained in the *Apprendi* opinion:

> "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged *in an indictment*, submitted to a jury, and proven beyond a reasonable doubt."

*Apprendi*, 530 U.S. at 476, 120 S.Ct. 2348 (quoting *Jones*, 526 U.S. at 243 n. 6, 119 S.Ct. 1215) (emphasis added).

{13} We disagree with Defendant's conclusion that the two cases, considered together, demonstrate that defendants are entitled to formal notice of firearm use by charge in a state indictment or information. First, *Jones* construed a federal statute, and the United States Supreme Court reached its holding by utilizing the doctrine of constitutional doubt. 526 U.S. at 239–40, 119 S.Ct. 1215. Second, the United States Supreme Court did not raise the *Jones* quote to a constitutional mandate. To the contrary, the Court specifically stated that its decision does "not address the indictment question separately today" because the defendant did not assert any constitutional claim based on any omissions in the indictment. *Apprendi*, 530 U.S. at 477 n. 3, 120 S.Ct. 2348.

{14} This Court has generally interpreted *Apprendi* narrowly. *See State v. Morales*, 2002–NMCA–016, ¶ 11, 131 N.M. 530, 39 P.3d 747; *State v. Wilson*, 2001–NMCA–032,

¶¶ 11–29, 130 N.M. 319, 24 P.3d 351; *State v. Gonzales,* 2001–NMCA–025, ¶¶ 21–32, 130 N.M. 341, 24 P.3d 776. We continue to do so in this case and decline to adopt Defendant's interpretation.

{15} Defendant argues that numerous federal circuit courts have "unanimously held that the [*Apprendi*] decision requires the government to charge in the indictment any fact that may be used to impose a sentence above the statutory maximum for the underlying offense." *See, e.g., United States v. Thomas,* 274 F.3d 655, 659–60 (2d Cir.2001); *United States v. Cotton,* 261 F.3d 397, 403 (4th Cir.2001) *rev'd on other grounds,* 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002); *United States v. Meshack,* 225 F.3d 556, 575 n. 15 (5th Cir.2000). Six of the seven cases Defendant cites are drug offense cases. The circuit courts decided that *Apprendi* and *Jones* required that the quantity of drugs, if used to impose a sentence above the statutory maximum, must be treated as an element of the offense, charged in the indictment, submitted to the grand jury, and proven beyond a reasonable doubt. *Thomas,* 274 F.3d at 659–60; *United States v. Eirby,* 262 F.3d 31, 35–36 (1st Cir.2001); *Cotton,* 261 F.3d at 402; *United States v. Strayhorn,* 250 F.3d 462, 466, 467 (6th Cir.2001) *overruled on other grounds by, United States v. Leachman,* 309 F.3d 377 (6th Cir.); *United States v. Nance,* 236 F.3d 820, 825 (7th Cir.2000); *Meshack,* 225 F.3d at 575, 576. The seventh case, *United States v. Prentiss,* 256 F.3d 971, 974–75, 980 (10th Cir.2001), held that, pursuant to *Jones* and other circuit court decisions, the Indian/non–Indian status of victim and defendant are essential elements of the crime of arson within Indian country and so must be alleged in the indictment. The issue before us, however, is not what *Apprendi* and *Jones* requires in the federal courts but what is required in New Mexico courts.

{16} As the State points out, the circuit court decisions apply to the federal system of pleading which requires considerably more detail than that required under Rule 5–205 NMRA 2002. Indeed, New Mexico procedural reforms have done away with the archaic method of reciting all particulars of an offense in an indictment; only details

sufficient to enable a defendant to prepare a defense are required to meet constitutional muster. *See State v. Shroyer,* 49 N.M. 196, 205–07, 160 P.2d 444, 449–50 (1945). These fundamental differences between federal and New Mexico's rules of pleading make federal case law on the issue of notification distinguishable. *See id.; see also, State v. Gilbert,* 98 N.M. 77, 82, 644 P.2d 1066, 1071 (Ct.App. 1982) ("An indictment is sufficient if it charges by using the name given to the offense by statute, or by stating in the terms of the statute so much of its definition as is sufficient to give the court and the defendant notice of the offense intended to be charged."). We decline, therefore, to consider the circuit court opinions determinative in this case.

**C. New Mexico Case Law**

{17} Defendant contends that *Apprendi* has overruled our holding in *State v. Barreras,* 88 N.M. 52, 54–55, 536 P.2d 1108, 1110–11 (Ct.App.1975) and, therefore, use of a firearm must be included in the charging document as an element of the crime charged. In *Barreras,* we held that, before the firearm enhancement statute can be applied, a defendant must be put on notice that the crime charged was committed by using a firearm, but specific mention of the word firearm or the firearm enhancement statute is not required in the charging instrument because the enhancement portion of the sentence is not an element of the conviction. *Id.* We emphasized in *Barreras* that essential fairness entitles a defendant to notice so as to enable him to prepare a response. *Id.* We have already determined that *Apprendi* and *Jones* do not require formal notice in a state charging instrument and affirm our holding in *Barreras.*

{18} Defendant also suggests that *State v. Wilson,* 2001–NMCA–032, ¶ 27, 130 N.M. 319, 24 P.3d 351, supports his view that firearm use must be charged in the information. He contends that this Court in *Wilson* implicitly recognized that the *Apprendi* decision applied to Section 31–18–16. The crux of the issue in *Wilson* was whether the trial court's application of NMSA 1978, § 31–18–15.1 (1993), which gives the judge discretion

in determining the basic sentence, violated the jury and burden of proof principles of *Apprendi.* *See Wilson,* 2001–NMCA–032, ¶ 13, 130 N.M. 319, 24 P.3d 351. This Court, in referencing Section 31–18–16 in *Wilson,* observed that our State's firearm enhancement statute already requires proof of an additional fact before a sentence can be enhanced under the statute. *Wilson,* 2001–NMCA–032, ¶ 16, 130 N.M. 319, 24 P.3d 351. *See, e.g.,* § 31–18–16(A) and (C). There is no dispute that such a jury finding by special verdict was made in this case. The issue in this case is one of notice; it is not one of jury and burden of proof requirements under *Apprendi.*

{19} We think our view is further supported by *Caristo v. Sullivan,* 112 N.M. 623, 631, 818 P.2d 401, 409 (1991). In that case, our Supreme Court focused on the State's well established and traditional notice requirements for aggravating circumstances. *Id.* The Court concluded that the aggravating circumstance need not be formally alleged and that actual advance notice of the aggravating circumstance will give a defendant an opportunity to prepare a response. *Id.* Specifically the court recognized that a defendant will have been put on notice of the aggravating circumstance and will have had an opportunity to prepare a response if the aggravation "under the statute is premised upon a circumstance which itself was an element of the offense *or a fact upon which such an element was established.*" *Id.* (emphasis added). In this case, Defendant's firearm use was a fact used to establish an element of the murder of Lewis and attempted murder of Eaton.

{20} Defendant's argument that he received insufficient notice of firearm use in the criminal information is without merit. *See Barreras,* 88 N.M. at 55, 536 P.2d at 1111 (concluding that the word "firearm" in the indictment was not necessary to put defendant on notice to defend against committing the crime by using a firearm). The record is replete with evidence that Defendant had sufficient notification of firearm use in the commission of his crimes to prepare a response. The firearm was mentioned in the fourth count of the criminal information wherein Defendant was charged with tampering with the evidence, "to wit: a .380 handgun." Defendant used a theory of self-defense which he fully articulated in his opening statement. The State's opening also clearly stated that it would prove that Defendant shot the victims. Throughout the trial, there was extensive testimony by Defendant about how he acquired his gun, where he learned to shoot, where he normally kept his gun, when he normally took his gun with him, when and why he took the gun from his car on the day of the shooting, and why he fired shots at the victims.

{21} There was considerable testimony from the State's witnesses concerning the shell casings found at the scene and admitted into evidence, about the gunshot wounds to the victims, and a gunshot wound to Lewis' abdomen being the cause of death. In addition, there was eyewitness testimony that Defendant had fired the gun. We further note that at Defendant's first trial, a special verdict was given to the jury on firearm use beyond a reasonable doubt in the commission of the crimes charged. We conclude from the evidence in the record that Defendant received notice sufficient to comport with our State's traditional notice requirements. *See Caristo,* 112 N.M. at 631, 818 P.2d at 409; *Barreras,* 88 N.M. at 54–55, 536 P.2d at 1110–11.

{22} Defendant cites to several cases from other states in support of his position. Because New Mexico law provides the necessary guidance, we decline to address these arguments.

**CONCLUSION**

{23} For the foregoing reasons, we affirm.

{24} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, CYNTHIA A. FRY, Judge.